UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JANICE ACCARDO, ET AL.                    CIVIL ACTION

VERSUS                                    NO.  06-8568

LAFAYETTE INSURANCE COMPANY,              SECTION "R"(3)
ET AL.

<u>**ORDER AND REASONS**</u>

Before the Court are defendants' motions to sever and plaintiffs' motion to remand to state court.  For the following reasons, the Court GRANTS the defendants' motions to sever and GRANTS in part and DENIES in part plaintiffs' motion to remand.

**I.    BACKGROUND**

Plaintiffs in this action are eighteen Louisiana homeowners who allege that they suffered damage to their homes as a consequence of Hurricane Katrina and/or Hurricane Rita.[1]

_____

[1] There has been some dispute in the papers as to the number of plaintiffs in this lawsuit.  Although defendants refer to twenty-eight plaintiffs, several of the claims set forth in the petition are jointly asserted by a husband and wife for damage to

Plaintiffs have sued their insurance providers under their homeowner's policies for breach of contract and bad faith under La. Rev. Stat. §§ 22:658 and 22:1220.  Of the eighteen homeowners, five have sued Allstate Insurance Company, three have sued Standard Fire Insurance Company,[2] two have sued State Farm Fire and Casualty Company, two have sued Lafayette Insurance Company, two have sued Hartford Insurance Company of the Midwest, one has sued Liberty Mutual Insurance Company, and one has sued Lexington Insurance Company.  With the exception of Lafayette, the insurers lack citizenship or a principal place of business in Louisiana.  Thus, the parties are not completely diverse, a requirement for a federal court to have jurisdiction under 28 U.S.C. § 1332.  *See McLaughlin v. Mississippi Power Co.,* 376 F.3d 344, 353 (5th Cir. 2004).  Plaintiffs filed their claims in Louisiana state court, and Allstate removed them on October 19, 2006 with the consent of the other defendants.  Allstate asserts that this Court has jurisdiction under 28 U.S.C. § 1332 because the other insurers were joined improperly with Allstate, and thus the Court should not consider their citizenship when it

---

their single piece of property.  The petition encompasses claims for eighteen separate pieces of property.

   [2] Standard Fire was improperly identified as St. Paul Traveler's Indemnity Company in the state court petition.

determines jurisdiction.  On November 15, 2006, Allstate filed a motion to sever and proceed separately with each plaintiff's claims under Rule 21 of the Federal Rules of Civil Procedure. Lexington and Standard Fire filed substantially similar motions to sever.  On November 20, 2006, plaintiffs filed a motion to remand, alleging that removal was improper because the nondiverse defendant, Lafayette, was joined properly with the other defendants.  In addition to the issue of joinder, the parties also disagree as to whether the plaintiffs' claims exceed the requisite amount in controversy of $75,000 under Section 1332. Finally, defendant State Farm alleges that federal question jurisdiction applies because the case implicates federal law under the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129.  *See* 28 U.S.C. § 1331.

## II.  LEGAL STANDARDS

### A.   Applying Louisiana Law

Because jurisdiction is based on diversity, Louisiana law applies to the substantive issues before the Court.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In Louisiana, the sources of law are legislation and custom.  *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004). These authoritative or primary sources of law are to be

3

"contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id.* (*quoting* La. Civ. Code art. 1*).*  In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Id.* (*quoting Prytania Park Hotel, Ltd. v. General Star Indem. Co.,* 179 F.3d 169, 174 (5th Cir. 1999)).  To make an 'Erie guess' on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it.  *Id.* (*quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

**B.    Removal**

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).  The removing party bears the burden of showing that federal jurisdiction exists.  *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited

4

jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 WL 419901, at *2 (E.D. La. 1995).  Though the Court must remand the case to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal.  28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).


**III. DISCUSSION**

As noted above, Allstate removed this case based on the alleged improper joinder of the plaintiffs' individual claims against their respective homeowner's insurers, including the lone nondiverse defendant, Lafayette.  Allstate asserts that its policyholders' claims are unrelated to the claims made by the policyholders of the other six insurers against them, and thus the claims against Allstate are improperly joined with the claims against the other insurance companies.  Allstate and two other diverse defendants seek severance of plaintiffs' claims and then ask the Court to exercise jurisdiction over the individual plaintiffs' claims under Section 1332.

Defendants rely on the Eleventh Circuit's decision in

5

*Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  In *Tapscott*, the Eleventh Circuit recognized that fraudulent joinder can exist when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability, and when the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.  The court identified this scenario as a third type of fraudulent joinder in addition to the two identified in *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003).[3] Specifically, the Eleventh Circuit held that "egregious" misjoinder, but not "mere" misjoinder, of parties that have no real connection with each other can constitute fraudulent joinder.  *Tapscott*, 77 F.3d at 1360.  The Fifth Circuit appears to have adopted *Tapscott*'s conception of fraudulent joinder in *In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002).[4]  There,

---

[3] In *Ross*, the Fifth Circuit stated that fraudulent joinder may be established by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant. 344 F.3d at 461.  Defendants here do not allege improper joinder on either of these grounds.

[4] The Fifth Circuit now officially refers to "fraudulent joinder" as "improper joinder."  *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005).  However, the term "fraudulent

the Fifth Circuit stated that a district court in its jurisdictional determination should consider whether misjoinder of a nondiverse party can defeat diversity jurisdiction.  *Id.* at 298 (citing *Tapscott*, 77 F.3d at 1360).  In a later petition for a writ of mandamus in that case, the court held that it did not have jurisdiction to review the district court's conclusion as to misjoinder, but it stated that its decision did not "detract[] from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction." *In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002).

More recently, the Fifth Circuit appeared to recognize the *Tapscott* principle in *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006).  There, the Fifth Circuit determined that federal jurisdiction over removed claims against a diverse defendant was proper, even though removal was precipitated by the state court's severance of these claims from plaintiff's claims against a nondiverse defendant over plaintiff's objection.  *Id.*  Plaintiff argued that the removal was improper because it was not based on the voluntary act of the plaintiff.  The Fifth Circuit confirmed that dismissal of a

---

joinder" is still used in many Fifth Circuit cases, causing no shortage of confusion.

fraudulently joined defendant was an exception to the voluntary-involuntary rule.  The court then held that even if the scenario before it did not satisfy the criteria for traditional fraudulent joinder (*i.e.*, fraud in the pleadings or inability to establish a cause of action against the in-state defendant), a like exception to the voluntary-involuntary rule applied to the improperly joined claims.  The court stated:

> The fraudulent joinder exception to the voluntary-involuntary rule is designed to prevent plaintiffs from blocking removal by joining nondiverse and/or in-state defendants who should not be parties.  That salutary purpose is also served by recognizing an exception to the voluntary-involuntary rule where defendants are improperly . . . joined.

*Id.*  In reaching its conclusion, the court cited *Tapscott* by analogy.  *Id.* at n.5.  The Fifth Circuit's apparent endorsement of the *Tapscott* principle in *Benjamin Moore* and *Crockett* guides the Court's decision in this case.[5]

_____

[5] It is worth noting that the Fifth and Eleventh Circuits appear to be the only circuit courts that have endorsed the *Tapscott* analysis, although district courts in other circuits have also done so.  *See, e.g., Federal Ins. Co. v. Tyco Int'l Ltd.*, 422 F.Supp.2d 357 (S.D.N.Y. 2006); *Asher v. Minn. Mining & Mfg. Co.*, 2005 WL 1593941 (E.D. Ky. June 30, 2005); *Lyons v. Lutheran Hosp. of Ind.*, 2004 WL 2272203 (S.D. Ind. Sept. 15, 2004).  The doctrine is not without its detractors.  Some district courts have described the *Tapscott* doctrine as unsupported by Supreme Court authority, contrary to the narrow construction to be given removal statutes, and productive of unnecessary confusion.  *See, e.g., Bird v. Carteret Mortgage Group*, 2007 WL 43551, at *5 (S.D. Ohio Jan. 5, 2007); *Rutherford v. Merck & Co., Inc.*, 428 F.Supp.2d 842, 851-52 (S.D. Ill. 2006);

Under *Tapscott*, the Court must first determine if joinder of all of the claims against the seven defendants is so egregious as to constitute improper joinder.  As a predicate to that decision, the Court must decide whether federal or state rules of joinder apply in a *Tapscott* analysis.  District courts are not of one mind on this issue.  *Compare Federal Ins. Co.,* 422 F.Supp.2d at 381-86 (applying state joinder law to determine whether there had been improper joinder), *Lyons*, 2004 WL 2272203, at *5 (same), *and Sweeney v. Sherwin Williams Co.*, 304 F.Supp.2d 868, 873 (S.D. Miss. 2004) (same), *with In re Diet Drugs*, 1999 WL 554584, at *3-4 (E.D. Pa. July 16, 1999) (applying federal joinder law) *and Asher*, 2005 WL 1593941, at *7 (declining to decide whether federal or state joinder law applied because their similarity on the issue rendered a determination unnecessary).  The majority of the district courts that have applied *Tapscott* have held that the misjoinder issue should be determined under state joinder law rather than federal joinder law.  *See Federal Ins. Co.*, 422

_____

*Osborn v. Metropolitan Life Ins. Co.*, 341 F.Supp.2d 1123, 1128 (E.D. Cal. 2004); *see also* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3723 at 658 (2006) (describing this third type of improper joinder as adding "a further level of complexity – and additional litigation – to a federal court's decision regarding removal jurisdiction").  In particular, courts have questioned whether *Tapscott*'s distinction between mere misjoinder and egregious misjoinder might be so subjective as to be unworkable.  *See Rutherford*, 428 F.Supp.2d at 852-53.

9

F.Supp.2d at 381 (surveying federal cases); *Asher*, 2005 WL
1593941, at *6 (same).  Taking a different approach, another
court in this district declined to determine whether federal or
state joinder law should apply.  *See Defourneaux v. Metropolitan
Property & Cas. Ins. Co.*, 2006 WL 2524165, at *1 (E.D. La. Aug.
30, 2006) (Feldman, J.).  The court found that "the standards for
joinder presented in Rule 20 of the Federal Rules of Civil
Procedure and Article 463 of the Louisiana Code of Civil
Procedure are very similar," and thus the application of either
rule would not materially affect the outcome of the court's
inquiry.  *Id*.  The court then proceeded to apply the federal
joinder rule in its analysis.  *Id.*

   Although the Court agrees with the *Defourneaux* result, it
finds that the better-reasoned approach is to apply state joinder
law to decide whether plaintiff has misjoined a nondiverse party
in an effort to defeat federal diversity jurisdiction.  As the
Southern District of Mississippi stated, "This approach shares
the same conceptual rationale underlying the doctrine of
fraudulent joinder."  *Jamison v. Purdue Pharma Co.*, 251 F.Supp.2d
1315, 1321 n.6 (S.D. Miss. 2003).  Under the fraudulent joinder
analysis, federal courts look to the substantive law of the state
in which an action was brought to determine if a plaintiff is
unable to state a claim against a nondiverse defendant.

Similarly, because plaintiffs brought their actions in state
court and were required to follow state joinder rules when they
did so, state joinder rules are the relevant ones to determine
the propriety of the joinder of plaintiffs and/or defendants
after removal to federal court.  *See In re Diet Drugs*, 294
F.Supp.2d 667, 673-74 (E.D. Pa. 2003) ("we do not see how federal
joinder rules should apply when the issue is fraudulent
misjoinder of non-diverse plaintiffs in a state court action so
as to defeat our diversity jurisdiction"); *Conk v. Richards &*
*O'Neil, LLP*, 77 F.Supp.2d 956, 971 (S.D. Ind. 1999) ("when Conk
filed his complaint in the Indiana court, he was not required to
comply with the Federal Rules of Civil Procedure in terms of
joinder of parties or claims or any other aspect of the case").
As one court recently observed, "this appears to be the most
rational way to view the propriety of any joinder since the
question is one of joinder in the state action before it was
removed." *Federal Ins. Co.*, 422 F.Supp.2d at 381.  Additionally,
some district courts have noted that application of state joinder
rules "is consistent with the 'heightened sensitivity to
federalism concerns' that permeates the law of removal." *Id.* at
382 (quoting *Osborn*, 341 F.Supp.2d at 1128).  Surely, a state is
entitled to adopt broader joinder principles than those embodied
in the Federal Rules, and a plaintiff should not lose his choice

of forum as a result of complying with such a state regime.

In this case, the relevant state joinder rule is Article 463 of the Louisiana Code of Civil Procedure.  That article states, in relevant part:

> Two or more parties may be joined in the same suit, either as plaintiffs or as defendants, if:
> (1) There is a community of interest between the parties joined;
> (2) Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
> (3) All of the actions cumulated are mutually consistent and employ the same form of procedure.

La. Code Civ. P. article 463.[6]  The Louisiana Supreme Court has defined "community of interest" as "the parties' causes of actions (or defenses) 'arising out of the same facts, or presenting the same factual and legal issues.'"  *Stevens v. Bd. of Trustees of Police Pension Fund of City of Shreveport*, 309 So. 2d 144, 147 (La. 1975) (quoting Official Revision Comment (c), Article 463); *see also Gill v. City of Lake Charles*, 119 La. 17 (1907).  Elaborating on the meaning of "community of interest" in Article 463, the Louisiana Fourth Circuit Court of Appeal has stated that a "community of interest is present between different actions or parties, where enough factual overlap is present between the cases to make it commonsensical to litigate them

_____

[6] There is no allegation here that plaintiffs' petition does not meet the second and third requirements.

together." *Mauberret-Lavie v. Lavie*, 850 So. 2d 1, 2 (La. Ct. App. 2003), *writ denied*, 861 So. 2d 569 (La. 2003).

The Court finds that there is insufficient factual overlap among these claims to make it a matter of common sense for the eighteen plaintiffs to litigate their individual actions together.  Indeed, the only factual overlap among these actions is that plaintiffs' properties were affected by the winds and rains of Hurricanes Katrina and/or Rita.  Beyond that, the plaintiffs simply own eighteen separate pieces of property in St. Bernard Parish.  Although all of the plaintiffs assert claims for breach of contract and bad faith adjustment practices against their respective insurers, no plaintiff asserts a claim against more than one defendant.  The lawsuit is most properly viewed as eighteen separate actions, each with its own particular facts, including the amount and type of damage sustained, the specific cause of the damage (wind, rain, and/or flood), and the adjustment practices and procedures employed by each insurance company with respect to each property.  Under similar circumstances, a Mississippi federal court recently stated:

> Each property owner in Mississippi who had real and personal property damaged in Hurricane Katrina is uniquely situated.  No two property owners will have experienced the same losses.  The nature and extent of the property damage the owners sustain from the common cause, Hurricane Katrina, will vary greatly in its particulars . . . .

13

*Comer v. Nationwide Mut. Ins. Co.*, 2006 WL 1066645, at *2 (S.D. Miss. Feb. 23, 2006).  This observation applies with equal force to Louisiana homeowners affected by Hurricanes Katrina and/or Rita.  In addition, plaintiffs fail to point to any material issues of fact that are common to all of the plaintiffs and defendants, other than generic evidence of the speed of the hurricanes' winds and plaintiffs' residence in St. Bernard Parish.[7]  These allegations are insufficient to provide the factual overlap contemplated under the "community of interest" standard.  Under the plaintiffs' theory, virtually all claims against an insurance company by any homeowner who sustained damage in Hurricanes Katrina and/or Rita could be joined together in a lawsuit, so long as the homeowners reside in a generally similar location.

A Louisiana appellate court recently rejected a similar joinder of plaintiffs and defendants in *Albarado v. Union Pacific R.R. Co.*, 787 So. 2d 431 (La. Ct. App. 2001), *writ granted on*

---

[7] The Court notes that plaintiffs repeatedly state in their papers that all plaintiffs reside in St. Bernard Parish, even though the state court petition lists some plaintiffs as being from Ascension, Jefferson, and St. Tammany Parishes.  Upon closer inspection, the addresses of those plaintiffs appear to be located in St. Bernard Parish, and thus for purposes of this motion, the Court credits the representations of the plaintiffs in their papers that all of the plaintiffs' properties are located in St. Bernard Parish.

*other grounds*, 796 So. 2d 666 (La. 2001).  There, plaintiffs were fourteen employees or former employees of railroad carriers who sued six separate railroad carriers under the Federal Employer's Liability Act for exposure to chemicals in the course of their employment with defendants.  *Id.* at 433-34.  Reversing the trial court, the Louisiana Fourth Circuit Court of Appeal held that joinder of these claims was improper under Article 463 because, as plaintiffs conceded, each plaintiff asserted only FELA claims against his own employer.  *Id.* at 438-39.  The court found that the case presented "significantly divergent fact patterns" because the "defendants' locations, policies, practices, equipment and supervisors are very different," and each plaintiff's "alleged claim is different" as to his work location, sites visited, alleged injuries, and length of exposure to different types of chemicals.  *Id.* at 439.  Thus, the court held that, in the absence of commonality among any of the plaintiffs and among any of the defendants, joinder of these claims was improper.  *Id.*

As plaintiffs acknowledge in their motion to remand, they are unable to offer any state court precedent to counter the finding in *Albarado* or otherwise buttress their assertion that the joinder of plaintiffs and defendants in this action is proper under Louisiana joinder rules.  Furthermore, plaintiffs present

15

no authority to support their contention that, even in the absence of any material factual overlap, these eighteen homeowners' actions should be joined because plaintiffs are individually unable to afford the cost of expert testimony. Thus, the Court finds that the joinder of plaintiffs' claims against defendants in this single action constitutes egregious misjoinder under Louisiana joinder rules.[8]

The result of this finding is that this matter is essentially eighteen separate actions brought by plaintiffs against their respective insurance companies. As such, the presence of the nondiverse defendant, Lafayette, does not serve to defeat federal jurisdiction in any of these actions in which a plaintiff has sued a diverse defendant, and the amount in controversy satisfies the $75,000 jurisdictional requirement. On

---

[8] The Court also notes that even if federal joinder rules applied to this analysis, the outcome would remain the same. Under Rule 20(a) of the Federal Rules of Civil Procedure, "All persons may join in one action as plaintiffs, if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to these persons will arise in the action. . . ." Fed. R. Civ. P. 20(a). For the same reasons discussed above, the claims do not arise out of the same transaction or occurrence, but rather are individual disputes between insurance companies and their insureds, each with a unique set of facts. Therefore, the Court finds that, whether it applies state or federal procedural rules, the joinder of the plaintiffs and the defendants in this matter constitutes egregious misjoinder under *Tapscott*.

16

the other hand, those cases in which the nondiverse Lafayette is
a defendant or in which the jurisdictional amount is not
satisfied must be remanded.  *See Tapscott*, 77 F.3d at 1355-60
(affirming the district court's decision to sever and remand the
claims against the nondiverse defendants for lack of diversity
jurisdiction); *see also Asher*, 2005 WL 1593941 at *8 ("Typically,
the proper remedy for misjoinder . . . would be for the court to
exercise jurisdiction over the action, sever the claims and
remand the claims of the nondiverse [parties].").  The Court
therefore severs and remands to state court the claims asserted
by plaintiffs Janice Accardo and Clyde A. Ory, respectively,
against Lafayette because there is no diversity of citizenship
between either plaintiff and the in-state defendant.

As for the claims brought by the remaining sixteen
homeowners against the six remaining defendants, it is undisputed
that complete diversity exists in each action, but the Court must
also determine whether the amount in controversy is satisfied.
Under Fifth Circuit law, a removing defendant's burden of showing
that the amount in controversy is sufficient to support federal
jurisdiction differs depending on whether the plaintiff's
complaint alleges a specific amount of monetary damages.  *See
Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).
When the plaintiff alleges a damage figure in excess of the

17

required amount in controversy, "that amount controls if made in good faith." *Id.* (*citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). If a plaintiff pleads damages less than the jurisdictional amount, this figure will also generally control, barring removal. *Allen*, 63 F.3d at 1335. "Thus, in the typical diversity case, the plaintiff is the master of his complaint." *Id.*

When the plaintiff has alleged an indeterminate amount of damages, the Fifth Circuit requires the removing defendant to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Simon v. Wal-Mart Stores*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen*, 63 F. 3d at 1335; *see also De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). A defendant satisfies this burden either by showing that it is facially apparent that the plaintiff's claims exceed the jurisdictional amount or by setting forth the facts in dispute supporting a finding that the jurisdictional amount is satisfied. *Allen*, 63 F.3d at 1335. The defendant must do more than point to a state law that might allow plaintiff to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual amount in controversy exceeds $75,000. *See De Aguilar*, 47 F.3d at 1412. When the "facially apparent" test is not met, it is appropriate for the Court to

18

consider summary-judgment-type evidence relevant to the amount in controversy as of the time of removal.  *Allen*, 63 F.3d at 1336. Finally, the Court notes that Louisiana law allows recovery for attorney's fees and penalties when an insurer has been arbitrary or capricious in denying a claim.  Under these circumstances, the Court is to consider claims for these items when it assesses the amount in controversy.  *See, e.g., Poynot v. Hicks*, 2002 WL 31040174 at *3 (E.D. La. 2002).

All of the plaintiffs assert claims for breach of contract and bad faith adjustment.  They seek attorney's fees and penalties under La. Rev. Stat. §§ 22:658 and 22:1220.  Moreover, except for plaintiffs Rene Augilar and Rosalie Augilar, all of the plaintiffs explicitly aver that they are not bringing a cause of action under Louisiana's Valued Policy Law, La. Rev. Stat. § 22:695.  (R. Doc. 1-2).  In a pre-removal amendment to their state court petition, each plaintiff sets forth the amount submitted in his proof of loss to his insurance company.  (*Id.*). Further, except for the Augilars, each plaintiff avers that his claim does not meet the amount-in-controversy requirement of $75,000 and waives the right to seek any judgment in excess of that figure.  (*Id.*).  Defendants nevertheless argue that the amount in controversy clearly exceeds the sum of $75,000 in each of these actions.  (R. Doc. 1, at 7-10).

19

The Court finds that it does not have jurisdiction over any of these actions, with the exception of the claims brought by the Augilars, as the defendants cannot show that it is facially apparent that the rest of plaintiffs' claims exceed the jurisdictional amount.  Based on their complaints, these homeowners have contested losses as follows:

| Homeowner | Proof of Loss | Amount Paid | Contested Loss |
|---|---|---|---|
| Marvin Baudean | $21,231.43 | $0 | $21,231.43 |
| John Burns and Lori Burns | $44,053.25 | $0 | $44,053.25 |
| Pearl Caruso | $56,254.79 | $14,469.74 | $41,785.05 |
| Sam Crosby and Jeanne Crosby | $43,319.02 | $11,362.42 | $31,956.60 |
| Thomas Darce and Susan Darce | $34,222.69 | $14,154.59 | $20,068.10 |
| Louis Duarte and Florella Duarte | $14,797.74 | $0 | $14,797.74 |
| Olga Dugas | $30,342.15 | $0 | $30,342.15 |
| Ronald Hasney | $28,887.97 | $8,579.60 | $20,308.37 |
| Demetrius Jackson and Tina Jackson | $39,408.32 | $2,461.43 | $36,946.89 |
| Guy Meyers and Shirley Meyers | $16,124.07 | $0 | $16,124.07 |
| Harold Mims and Tanya Mims | $8,659.34 | $2,778.97 | $5,880.37 |
| Charles Mungovan | $7,280.48 | $714.12 | $6,566.36 |
| Donald Plumley and Margaret Plumley | $21,082.19 | $7,469.48 | $13,612.71 |

| Homeowner | Proof of Loss | Amount Paid | Contested Loss |
|---|---|---|---|
| Frances Reilly and Francis Reilly | $31,659.97 | $11,711.47 | $19,948.50 |
| Dale Thibodeaux | $14,286.70 | $7,989.33 | $6,297.37 |
| Rebecca Wise | $29,445.02 | $3,872.98 | $25,572.04 |

Thus, the largest amount-in-controversy among these fifteen causes of action is the Burns' claim for $44,053.25.

Defendants contend that the amount in controversy is met because either the value of the plaintiffs' underlying policies exceeds $75,000, or the potential recovery of penalties and attorney's fees could result in a recovery of more than the jurisdictional amount. Neither assertion has any merit. First, as this Court has stated before, in a claim based on recovery under an insurance policy, it is the value of the claim, not the value of the underlying policy, that determines the amount in controversy, unless the value of the claim exceeds the value of the policy. *See Atkins v. Lexington Ins. Co.,* 2006 WL 1968895, at *3 (E.D. La. July 12, 2006) (citing *Hartford Ins. Grp. v. Lou-Con Inc.,* 293 F.3d 908, 911 (5th Cir. 2002) (declaratory judgment action)). Not one of these fifteen plaintiffs has asserted that the amount of his or her claim approaches or exceeds the policy limits. Thus, the policy amount is not determinative of the amount in controversy. Second, even if plaintiffs were able to

21

recover penalties and attorney's fees to the extent that La. Rev.
Stat. §§ 22:1220 and 22:658 allow, their individual totals would
still be less than the jurisdictional amount of $75,000.
Specifically, under Section 22:1220, an insurer that fails to pay
a claim upon satisfactory proof of loss is subject to "penalties
in an amount not to exceed two times the damages sustained or
five thousand dollars, whichever is greater," if its failure was
arbitrary and capricious.  La. Rev. Stat. § 22:1220.  However, a
plaintiff must show proof of actual damages arising from the
breach to recover any more than $5,000.  *See Hannover Corp. of
America v. State Farm Mutual Auto. Ins. Co.*, 67 F.3d 70, 75 (5th
Cir. 1995).  Plaintiffs here do not allege in their petition an
amount or type of damages, if any, that they sustained from their
insurer's breach.  Additionally, no defendant provides any
summary-judgment-type evidence to show that any plaintiff could
recover more than $5,000 for damages arising from its alleged
breach of contract.  Under Section 22:658, the insurer is subject
to a penalty, "*in addition to the amount of the loss*" of twenty-
five percent of the amount due under the policy, or $1,000,
whichever is greater, whenever it arbitrarily, capriciously, or
without probable cause fails to pay within 30 days of
satisfactory proof of loss.  La. Rev. Stat. § 22:658 (emphasis
added).  Thus, the plaintiffs with the largest claim would be

22

entitled to, at most, only about $11,000 under Section 22:658,
which would not be enough to push the Burns' claims over $75,000.
Furthermore, each of these fifteen plaintiffs expressly waived
the right to seek any judgment in excess of $75,000 in a pre-
removal attachment to their state court petition.  (R. Doc. 1-2,
at 16-21).  As a result, defendants cannot show that it is
facially apparent that any of these fifteen plaintiffs' claims
exceed the jurisdictional amount.

    The Court finds that it does have jurisdiction over the
claims brought by the Augilars against Lexington.  In their
petition, the Augilars state that they submitted a proof of loss
to their insurer in the amount of $97,633.84.  They further state
that "partial payment" has been made on their claims, but provide
no evidence as to how much they have been paid.  Lexington
represents that it has paid $7,131,04 toward the Augilars' proof
of loss, leaving an outstanding claim of about $90,000.  (R. Doc.
46-2, at 4).  Given that this sum exceeds the jurisdictional
amount before potential penalties and attorney's fees under La.
Rev. Stat. §§ 22:1220 and 22:658 are considered, it is facially
apparent that plaintiffs' claims satisfy the amount-in-
controversy requirement of $75,000.  Moreover, the Augilars have
not filed a stipulation renouncing the right to enforce a
judgment in an amount greater than $75,000, nor did they

otherwise establish to a legal certainty that their claims are for less than $75,000. Therefore, the Court denies plaintiffs' motion to remand the Augilars' cause of action.

Contrary to defendants' argument, the Court's jurisdiction over the Augilars' claims does not provide a basis for the Court to exercise supplemental jurisdiction over the fifteen claims against the diverse defendants that do not exceed the jurisdictional amount. Defendants' reliance on *Exxon Mobil Corp. v. Allapattah Servs.*, Inc., 545 U.S. 546, 125 S.Ct. 2611 (2005), in support of their argument is misplaced. The Supreme Court's holding in *Exxon Mobil* applied only to claims "arising out of the same Article III case or controversy." *Id.* (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130 (1966), which required a common nucleus of operative fact for pendant [now supplemental] jurisdiction). Here, the Court has already determined that plaintiffs' claims do not involve a common nucleus of operative fact and are to be severed into separate actions. Thus, *Exxon Mobil* does not apply to this matter.

Finally, the Court rejects State Farm's contention that federal jurisdiction over these actions is proper under 28 U.S.C. § 1331. Federal district courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a claim arises under federal

24

law must be determined by referring to the "well-pleaded complaint." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  This means that the federal question must appear on the face of the complaint.  *See Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997). Because defendants may remove a case to federal court only if the plaintiffs could have brought the action in federal court from the outset, "the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow*, 478 U.S. at 808 (citation omitted).  Defendants assert that plaintiffs ask the Court to settle a dispute arising under a Standard Flood Insurance Policy, the terms of which are established by federal regulation.  *See* 44 C.F.R. Pt. 61, App. A. The Court finds no such disputes in plaintiffs' complaints, which assert recovery only under their homeowner's policies and related Louisiana law.

Because plaintiffs do not assert any claims under federal law, federal question jurisdiction exists only if an exception to the well-pleaded complaint rule applies.  Defendants assert that plaintiffs' actions require the Court to construe a federal statute, the National Flood Insurance Act of 1968, 42 U.S.C. §§

25

4001-4129, because plaintiffs also seek adjudication of any claims arising from their federal flood policies.  Defendants assert that there is a compelling federal interest in the application of the federal flood program.  In limited circumstances, an action that contains "an important issue of federal law" may establish federal jurisdiction.  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2368 (2005) ("The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law . . . .").  In *Grable*, the plaintiff filed a quiet title action in Michigan state court alleging that the defendant's title to certain property was invalid, and defendant removed.  125 S. Ct. at 2366.  A Michigan court rule required the plaintiff to specify the facts establishing the superiority of its claims, and plaintiff "premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law." *Id*. at 2368.  Whether the plaintiff "was given notice within the meaning of a the federal statute," the Court recognized, was "thus an essential element of its quiet title claim, and the meaning of the federal statute [was] actually in dispute . . . ." *Id*.  In finding federal question jurisdiction, the Court observed that the meaning of the federal tax provision

26

was an important issue of federal law that belonged in federal court, especially in light of the Government's interest in the "'prompt and certain collection of delinquent taxes,'" and the IRS' need for certainty in notice requirements to provide buyers of seized property assurance that the IRS has taken all steps required to convey good title. *Id.* (*quoting United States v. Rodgers*, 461 U.S. 677, 709 (1983)). The Supreme Court has since stated that only a "slim category" of cases will satisfy the *Grable* paradigm. *Empire Healthchoice Assur., Inc. v. McVeigh*, 126 S. Ct. 2121, 2137 (2006). This is because *Grable* did not overturn the rule that federal question jurisdiction exists only when "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 125 S. Ct. at 2368. The mere presence of a federal issue "does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813. Since *Grable* was decided, federal courts have repeatedly repelled attempts to peg federal jurisdiction on its holding, often because the federal issue allegedly implicated was not "disputed and substantial." *See, e.g.*, *McCormick v. Excel Corp.*, 413 F. Supp. 2d 967, 970 (E.D. Wis. 2006) (the

27

meaning of the crucial term in a federal regulation had already been decided); *Samuel Trading, LLC v. Diversified Group, Inc.*, 420 F. Supp. 2d 885, 892 (N.D. Ill. 2006) (though the case might contain a dispute over federal law, the dispute was not substantial because it did not affect plaintiff's right to relief).

Defendants do not explain how the Court would be forced to interpret the NFIA to decide these cases or to award plaintiffs the relief they seek, and the Court does not see how it might be forced to do so.  Plaintiffs seek recovery based on the terms of their *homeowner's* policies and relevant state law.  They do not urge any particular reading of federal law in support of their claims.  In fact, the word "flood" does not appear anywhere in plaintiffs' state court petition.  Finally, defendants' assertion that the federal government has a compelling interest in the resolution of these claims because of the mere existence of the NFIA proves too much.  Interpretation of a contract under state law will often involve events, parties, and issues that are otherwise the subject of federal regulation.  A mere tangential relationship to a federal  policy cannot be sufficient to bring these claims into federal court.  The Court finds that it does not have jurisdiction over these cases under 42 U.S.C. § 1331.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendants'
motions to sever.   Additionally, the Court GRANTS plaintiffs'
motion to remand the following claims: *Janice Accardo v.
Lafayette Insurance Company*; *Marvin L. Baudean, Jr. v. St. Paul
Traveler's Indemnity Company*; *John E. Burns, III, et al. v. State
Farm Fire and Casualty Company*; *Sam A. Crosby, Jr., et al. v.
Liberty Mutual Insurance Company*; *Thomas J. Darce, et al. v.
Allstate Insurance Company*; *Luis A. Duarte, Jr., et al. v.
Allstate Insurance Company*; *Olga D. Dugas v. Hartford Insurance
Company*; *Ronald G. Hasney v. Allstate Insurance Company*;
*Demetrius A. Jackson, et al. v. St. Paul Traveler's Indemnity
Company*; *Guy F. Meyers, et al. v. Hartford Insurance Company*;
*Harold W. Mims, Jr., et al. v. St. Paul Traveler's Indemnity
Company*; *Clyde A. Ory, Sr. v. Lafayette Insurance Company*; *Donald
R. Plumley, et al. v. Allstate Insurance Company*; *Francis C.
Reilly, IV, et al. v. Allstate Insurance Company*; *Dale D.
Thibodeaux v. State Farm Fire and Casualty Company*; and *Rebecca
A. Wise v. Allstate Insurance Company*.   The Court DENIES
plaintiffs' motion to remand the cause of action brought by the
Augilars against Lexington.   The Augilars are ordered to amend
their complaint within 10 days to rename this case *Rene Augilar,*

*Sr. and Rosalie Augilar v. Lexington Insurance Company*.   The case shall bear the same case number as before the amendment.

New Orleans, Louisiana, this <u>30th</u> day of January, 2007.

_____
SARAH S. VANCE
UNITED STATES DISTRICT COURT